**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

------------------------------------------------------------ x
                                                             :
In re                                                        :        **Chapter 11**
                                                             :
**24 HOUR FITNESS**                                          :        **Case No. 20– 11558 (KBO)**
**WORLDWIDE, INC.,** *et al.,*                               :
                                                             :
                              **Debtors.**[1]                :        **(Jointly Administered)**
                                                             :
------------------------------------------------------------ x

**STATEMENT OF FINANCIAL AFFAIRS FOR**
**24 HOUR FITNESS UNITED STATES, INC. (CASE NO. 20-11560)**

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are 24 Hour Holdings II LLC (N/A); 24 Hour Fitness Worldwide, Inc. (5690); 24 Hour Fitness United States, Inc. (8376); 24 Hour Fitness USA, Inc. (9899); 24 Hour Fitness Holdings LLC (8902); 24 San Francisco LLC (3542); 24 New York LLC (7033); 24 Denver LLC (6644); RS FIT Holdings LLC (3064); RS FIT CA LLC (7007); and RS FIT NW LLC (9372).  The Debtors' corporate headquarters and service address is 12647 Alcosta Blvd., Suite 500, San Ramon, CA 94583.

**GLOBAL NOTES AND STATEMENTS OF
LIMITATIONS, METHODOLOGY, AND DISCLAIMERS
REGARDING THE DEBTORS' SCHEDULES OF ASSETS
AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

24 Hour Fitness Worldwide, Inc. ("**Worldwide**") and its debtor affiliates in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), are filing their respective Schedules of Assets and Liabilities (each, a "**Schedule**" and, collectively, the "**Schedules**") and Statements of Financial Affairs (each, a "**Statement**" and, collectively, the "**Statements**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") pursuant to section 521 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

These Global Notes and Statements of Limitations, Methodology, and Disclaimers Regarding the Debtors' Schedules and Statements (the "**Global Notes**") pertain to, are incorporated by reference in, and comprise an integral part of all of the Schedules and Statements. The Global Notes are in addition to the specific notes set forth below with respect to the Schedules and Statements (the "**Specific Notes**" and, together with the Global Notes, the "**Notes**"). These Notes should be referred to, and referenced in connection with, any review of the Schedules and Statements.

The Debtors' management team prepared the Schedules and Statements with the assistance of their advisors and other professionals. The Schedules and Statements are unaudited and subject to potential adjustment. In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of preparation. The Debtors' management team and advisors have made reasonable efforts to ensure that the Schedules and Statements are as accurate and complete as possible under the circumstances; however, subsequent information or discovery may result in material changes to the Schedules and Statements, and errors or omissions may exist. Notwithstanding any such discovery, new information, or errors or omissions, the Debtors do not undertake any obligation or commitment to update the Schedules and Statements.

The Debtors reserve all rights to amend or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including the right to dispute or otherwise assert offsets or defenses to any claim reflected on the Schedules and Statements as to amount, liability, classification, or identity of the applicable Debtor or to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated." Furthermore, nothing contained in the Schedules, Statements, or Notes shall constitute a waiver of any of the Debtors' rights or an admission with respect to their chapter 11 cases, including any issues involving objections to claims, substantive consolidation, equitable subordination, defenses, characterization or re-characterization of contracts and leases, assumption or rejection of contracts and leases under the provisions of chapter 3 of the Bankruptcy Code, causes of action arising under the provisions of chapter 5 of the Bankruptcy Code, or any other relevant applicable laws to recover assets or avoid transfers.

## Global Notes

**The Schedules, Statements, and Notes should not be relied upon by any persons for information relating to current or future financial conditions, events, or performance of any of the Debtors or their affiliates.**

1.  **Description of the Cases**.  On June 15, 2020 (the "**Petition Date**"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On the Petition Date, the Bankruptcy Court entered an order authorizing the joint administration of the chapter 11 cases pursuant to Bankruptcy Rule 1015(b). [*See* Docket No. 90.]  Notwithstanding the joint administration of the Debtors' cases for procedural purposes, each Debtor has filed its own Schedule and Statement.  On June 25, 2020, the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors pursuant to section 1102(a)(1) of the Bankruptcy Code (the "**Creditors' Committee**").

2.  **Basis of Presentation**.  For financial reporting purposes, the Debtors generally prepare consolidated financial statements, which include information for Worldwide and its Debtor and non-Debtor affiliates. The Schedules and Statements are unaudited and reflect the Debtors' reasonable efforts to report certain financial information of each Debtor on an unconsolidated basis.  These Schedules and Statements neither purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("**GAAP**"), nor are they intended to be fully reconciled with the financial statements of each Debtor.

    The Debtors used reasonable efforts to attribute the assets and liabilities, certain required financial information, and various cash disbursements to each particular Debtor entity.  Because the Debtors' accounting systems, policies, and practices were developed for consolidated reporting purposes rather than for reporting by legal entity, however, it is possible that not all assets and liabilities have been recorded with the correct legal entity on the Schedules and Statements. Accordingly, the Debtors reserve all rights to supplement and amend the Schedules and Statements in this regard, including with respect to reallocation of assets or liabilities to any particular entity.

3.  **Reporting Date**.  Unless otherwise noted on the specific responses, the Schedules and Statements generally reflect the Debtors' books and records as of the Petition Date. The liability values are as of the Petition Date, adjusted for authorized payments made under the First Day Orders (as defined below).

4.  **Current Values**.  The assets and liabilities of each Debtor are listed on the basis of the book value of the asset or liability in the respective Debtor's accounting books

and records.  Unless otherwise noted, the carrying value on the Debtors' books, rather than the current market value, is reflected in the Schedules and Statements.

5.   **Confidentiality**.   There may be instances where certain information was not included or was redacted due to the nature of an agreement between a Debtor and a third party, concerns about the confidential or commercially sensitive nature of certain information, or to protect the privacy of an individual.

6.   **Consolidated Entity Accounts Payable and Disbursement Systems**. As described in the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Continue Participating in Existing Cash Management System and Using Bank Accounts and Business Forms, and (B) Continue Intercompany Transactions, (II) Providing Administrative Expense Priority for Postpetition Intercompany Claims, and (III) Granting Related Relief* [Docket No. 8] (the "**Cash Management Motion**"), the Debtors utilize an integrated, centralized cash management system in the ordinary course of business to collect, concentrate, and disburse funds generated by their operations (the "**Cash Management System**").   The Debtors maintain a consolidated disbursements system to pay operating and administrative expenses through disbursement accounts.

In the ordinary course of business, the Debtors maintain business relationships among each other, which result in intercompany receivables and payables (the "**Intercompany Claims**") arising from intercompany transactions (the "**Intercompany Transactions**").   As set forth more fully in the Cash Management Motion, the primary Intercompany Transactions giving rise to Intercompany Claims are cash receipts activities, disbursement activities, and expense allocations.  Historically, Intercompany Claims are not settled by actual transfers of cash among the Debtors.  Instead, the Debtors track all Intercompany Transactions in their accounting system, which concurrently are recorded on the applicable Debtors' balance sheets.  The Debtors' accounting system requires that all general-ledger entries be balanced at the legal-entity level.  Unless otherwise noted, the Debtors have reported the aggregate net intercompany balances among the Debtors as assets on Schedule A/B or as liabilities on Schedule E/F, as appropriate.

7.   **Accuracy**.   The financial information disclosed herein was not prepared in accordance with federal or state securities laws or other applicable nonbankruptcy law or in lieu of complying with any periodic reporting requirements thereunder. Persons and entities trading in or otherwise purchasing, selling, or transferring claims against or equity interests in the Debtors should evaluate this financial information in light of the purposes for which it was prepared.  The Debtors are not liable for and undertake no responsibility to indicate variations from securities laws or for any evaluations of the Debtors based on this financial information or any other information.

8. **Net Book Value of Assets**. In many instances, current market valuations are not maintained by or readily available to the Debtors. Thus, wherever possible, net book values as of the Petition Date are presented. When necessary, the Debtors have indicated that the value of certain assets is "unknown" or "undetermined." Amounts ultimately realized may vary materially from net book value (or other value so ascribed). Accordingly, the Debtors reserve all rights to amend, supplement, and adjust the asset values set forth in the Schedules and Statements. As applicable, fixed assets and leasehold-improvement assets that have been fully depreciated or amortized, or were expensed for GAAP accounting purposes, have no net book value and, therefore, are not included in the Schedules and Statements.

9. **Undetermined Amounts**. Claim amounts that could not readily be quantified by the Debtors are scheduled as "undetermined," "unknown," or "N/A." The description of an amount as "undetermined," "unknown," or "N/A" is not intended to reflect upon the materiality of the amount.

10. **Excluded Assets and Liabilities**. The Debtors believe that they have identified, but did not necessarily value, all material categories of assets and liabilities in the Schedules. The Debtors have excluded certain accrued liabilities, including, without limitation, accrued salaries and wages, employee benefit accruals, and certain other accruals, as well as certain other assets and liabilities considered to have *de minimis* or no market value, from the Schedules and Statements. Other immaterial assets and liabilities may also have been excluded.

11. **Totals**. All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements and exclude items identified as "unknown" or "undetermined." If there are unknown or undetermined amounts, the actual totals may be materially different from the listed totals.

12. **Currency**. All amounts shown in the Schedules and Statements are in U.S. Dollars, unless otherwise indicated.

13. **Payment of Prepetition Claims Pursuant to First Day Orders**. Following the Petition Date, the Bankruptcy Court entered various orders (the "**First Day Orders**") authorizing, but not directing, the Debtors to, among other things, pay certain prepetition (i) service fees and charges assessed by the Debtors' banks; (ii) insurance and surety bond obligations; (iii) obligations to critical vendors; (iv) claims of shippers and lienholders; (v) customer program obligations; (vi) employee wages, salaries, and related items (including, employee benefit programs and independent contractor obligations); and (vii) taxes and assessments. Accordingly, outstanding liabilities may have been reduced by any court-approved post-petition payments made with respect to prepetition payables. Where and to the extent these liabilities have been satisfied, they are not listed in the Schedules and Statements unless otherwise noted. To the extent the Debtors later pay any amount of the claims listed in the Schedules and Statements pursuant to any orders entered by the Bankruptcy Court, the Debtors reserve all rights to amend or

supplement the Schedules and Statements or to take other action, such as filing claims objections, as is necessary and appropriate to avoid overpayment or duplicate payments for liabilities. Nothing contained herein should be deemed to alter the rights of any party in interest to contest a payment made pursuant to an order of the Bankruptcy Court where such order preserves the right to contest.

14. **Other Paid Claims**. To the extent the Debtors have reached any postpetition settlement with a vendor or other creditor, the terms of such settlement will prevail and shall supersede amounts listed in the Debtors' Schedules and Statements and be enforceable by all parties, subject to Bankruptcy Court approval.

15. **Setoffs**. The Debtors routinely incur certain setoffs with respect to vendors and other third parties in the ordinary course of business. Setoffs in the ordinary course can result from various items, including, but not limited to, pricing discrepancies, returns, promotional funding, and other disputes between the Debtors and third parties. These routine setoffs are consistent with the ordinary course of business in the Debtors' industry and, therefore, can be particularly voluminous, unduly burdensome, and costly for the Debtors to regularly document. Therefore, although such setoffs and other similar rights may have been accounted for when scheduling certain amounts, these ordinary-course setoffs are not independently accounted for and, thus, are excluded from the Debtors' Schedules and Statements. Any setoff of a prepetition debt to be applied against the Debtors is subject to the automatic stay and must comply with section 553 of the Bankruptcy Code.

16. **Inventory**. The Debtors maintain saleable inventory, primarily at their club locations. Such inventories are valued at the lower of cost or market or net realizable value.

17. **Property and Equipment**. Property and equipment are recorded at historical cost. Depreciation is computed on the straight-line method over the estimated useful lives of the furniture, fixtures, and equipment, which generally range from five to ten years. Amortization of leasehold improvements is computed on the straight-line method based upon the shorter of the estimated useful lives of the assets or the terms of the respective leases.

18. **Debtors' Reservation of Rights**. Nothing contained in the Schedules, Statements, or Notes shall constitute a waiver of rights with respect to these chapter 11 cases, including, but not limited to, the following:

    a. Any failure to designate a claim listed on the Debtors' Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such amount is not "disputed," "contingent," or "unliquidated." The Debtors reserve the right to dispute and to assert setoff rights, counterclaims, and defenses to any claim reflected on the Schedules as to amount, liability, and classification and to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated."

b. Notwithstanding that the Debtors have made reasonable efforts to correctly characterize, classify, categorize, or designate certain claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements, the Debtors nonetheless may have improperly characterized, classified, categorized, or designated certain items. The Debtors thus reserve all rights to re-characterize, re-classify, re-categorize, or re-designate items reported in the Schedules and Statements at a later time as is necessary and appropriate.

c. The listing of a claim on Schedule D as "secured," on Schedule E/F (Part 1) as "priority," on Schedule E/F (Part 2) as "unsecured" or the listing of a contract or lease on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the claimant or a waiver of the Debtors' rights to re-characterize or re-classify such claim or contract pursuant to an amendment to the Schedules, a claim objection, or otherwise. Moreover, although the Debtors may have scheduled claims of various creditors as secured claims for informational purposes, no current valuation of the Debtors' assets in which such creditors may have a security interest has been undertaken. Except as provided in an order of the Bankruptcy Court, the Debtors reserve all rights to dispute and challenge the secured nature or amount of any such creditors' claims, the characterization of the structure of any transaction, or any document or instrument related to such creditors' claims.

d. In the ordinary course of their business, the Debtors lease real property from certain third-party lessors to operate their businesses. The Debtors have made commercially reasonable efforts to list any such leases in Schedule G, and any current amounts due under such leases that were outstanding as of the Petition Date are listed on Schedule E/F. Except as otherwise noted herein, the property subject to any such leases is not reflected in Schedule A/B as either owned property or assets of the Debtors, and neither is such property or assets of third parties within the control of the Debtors. Nothing in the Schedules is or shall be construed as an admission or determination as to the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all rights with respect to any of such issues, including the re-characterization thereof.

e. The claims of individual creditors for, among other things, goods, products, services, or taxes are listed as the amounts entered on the Debtors' books and records and may not reflect credits, allowances, or other adjustments due from such creditors to the Debtors. The Debtors reserve all of their rights with regard to such credits, allowances, and other adjustments, including the right to assert claims objections and/or setoffs with respect to the same.

f. The Debtors' businesses are part of a complex enterprise. Although the Debtors have exercised their reasonable efforts to ensure the accuracy of

their Schedules and Statements, the Schedules and Statements nevertheless may contain errors and omissions. The Debtors hereby reserve all of their rights to dispute the validity, status, and enforceability of any contracts, agreements, and leases identified in the Debtors' Schedules and Statements and to amend and supplement the Schedules and Statements as necessary.

g.  The Debtors further reserve all of their rights, claims, and causes of action with respect to the contracts and agreements listed on the Schedules and Statements, including, but not limited to, the right to dispute and challenge the characterization or the structure of any transaction, document, and instrument related to a creditor's claim.

h.  Except as otherwise indicated, the Debtors have identified the primary Debtor obligor(s) with respect to their executory contracts, unexpired leases, and other agreements. The Debtors reserve their rights to amend and supplement the Schedules and Statements to the extent that guarantees and other secondary liability claims are identified. In addition, the Debtors reserve the right to amend the Schedules and Statements to re-characterize and re-classify any such contract or claim.

i.  Listing a contract or lease on the Debtors' Schedules and Statements shall not be deemed an admission that such contract is an executory contract, such lease is an unexpired lease, or that either necessarily is a binding, valid, and enforceable contract. The Debtors hereby expressly reserve the right to assert that any contract listed on the Debtors' Schedules and Statements does not constitute an executory contract within the meaning of section 365 of the Bankruptcy Code and the right to assert that any lease so listed does not constitute an unexpired lease within the meaning of section 365 of the Bankruptcy Code.

j.  Exclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated or otherwise expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. Conversely, inclusion of certain intellectual property should not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated or otherwise expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.

k.  To timely close the books and records of the Debtors as of the Petition Date and to prepare such information on a legal-entity basis, the Debtors were required to make certain estimates and assumptions that affect the reported amounts of assets and liabilities and reported revenue and expenses as of the Petition Date. The Debtors reserve all rights to amend the reported amounts of assets, liabilities, revenue, and expenses to reflect changes in those estimates and assumptions.

19.     **Global Notes Control**.  In the event that the Schedules or Statements differ from any of the foregoing Global Notes, the Global Notes shall control.

**<u>Specific Notes with Respect to the Debtors' Schedules of Assets and Liabilities</u>**

*Schedule A/B*

a. **Part 1.** As set forth more fully in the Cash Management Motion, the Debtors conduct their operations through an extensive network of bank accounts. The values provided for in Schedule A/B, Item 3 for each account for a given Debtor reflect the ending cash balance of such account as of the close of business on June 14, 2020.

b. **Part 2.** The Debtors maintain certain deposits in the conduct of their business operations, which are included in the Schedules for the appropriate legal entity. Certain prepaid or amortized assets are listed in Part 2 in accordance with the Debtors' books and records. The amounts listed in Part 2 do not necessarily reflect values that the Debtors will be able to collect or realize. The amounts listed in Part 2 include, among other things, various prepaid deposits, prepaid taxes, prepaid insurance, and prepaid supplies.

c. **Part 3.** The Debtors' accounts receivable information includes receivables from the Debtors' members, vendors, or third parties, which are calculated net of any amounts that, as of the Petition Date, may be owed to such parties in the form of offsets or other adjustments pursuant to the Debtors' day-to-day operations or may, in the Debtors' opinion, be difficult to collect from such parties due to the passage of time or other circumstances. The Debtors indicate the age of accounts receivables in the Schedules for the applicable Debtor. The accounts receivable balances in this section exclude intercompany receivables.

As stated in the Cash Management Motion, the Debtors historically have tracked Intercompany Transactions and continue to track such Intercompany Transactions on a post-petition, Debtor-by-Debtor basis.

d. **Part 4.** Any of the Debtors' ownership interests in subsidiaries, partnerships, and joint ventures were not considered and are not listed in Schedule A/B, Part 4 because the fair market value of such interests is dependent on numerous variables and factors and may differ significantly from the net book value.

e. **Part 5.** The Debtors maintain saleable inventory, primarily at their club locations. Such inventories are valued at the lower of cost or market or net realizable value.

f. **Part 7.** The Debtors have identified owned furniture, fixtures, and equipment. Actual realizable values may vary significantly relative to net book values as of the Petition Date.

g. **Part 9.** Actual realizable values of the identified leasehold improvements may vary significantly relative to net book values as of the Petition Date.

h. **Part 10.** The Debtors have identified intangible assets as of the Petition Date, although the Debtors have not listed the value of such assets because the values reflected in the Debtors' books and records may not accurately reflect such assets' value in the

marketplace. Additionally, certain of the Debtors have member information from conducting gift card programs, credit card and online sales, and ordinary-course business practices for an operator of fitness clubs, which information may include personally identifiable information. The Debtors maintain certain records in the ordinary course of business but do not sell these records in the ordinary course of business. Due to the need to protect confidential information and individual privacy, the Debtors have not furnished any customer lists on their Schedules.

i. **Part 11.** In the ordinary course of business, the Debtors may have accrued, or may subsequently accrue, certain rights to counterclaims, cross-claims, setoffs, and refunds with and potential warranty claims against their vendors, among other claims. Additionally, certain of the Debtors may be party to pending litigation in which the Debtors have asserted, or may assert, claims as plaintiffs or counter-claims and/or cross-claims as defendants. Such litigation is listed in the Statements.

Despite exercising their reasonable efforts to identify all such assets, the Debtors may not have listed all of their causes of action or potential causes of action against third parties as assets in their Schedules, including, but not limited to, avoidance actions arising under chapter 5 of the Bankruptcy Code, actions under other relevant nonbankruptcy laws to recover assets, and actions relating to or arising from the COVID-19 pandemic. The Debtors reserve all of their rights with respect to any claims, causes of action, or avoidance actions they may have, and neither these Notes nor the Schedules shall be deemed a waiver of any such claims, causes of action, or avoidance actions or in any way prejudice or impair the assertion of such claims.

The Debtors file consolidated federal tax returns, as well as certain of their state tax returns, under Worldwide. The values of the net operating losses listed in Schedule A/B reflect the amounts listed in the Debtors' books and records, which may not reflect the value recoverable on account of such net operating losses, and may reflect net operating losses accumulated for more than one tax year.

Where a Debtor holds a positive net intercompany balance, such amount has been listed on Schedule A/B for such Debtor. Correspondingly, where a Debtor holds a negative net intercompany balance, such amount has been listed on Schedule E/F, Part 2 for such Debtor.

### Schedule D

The claims listed on Schedule D, as well as the guarantees of those claims listed on Schedule H, arose and were incurred on various dates; a determination of the date upon which each claim arose or was incurred would be unduly burdensome and cost prohibitive. Accordingly, not all such dates are included for each claim. To the best of the Debtors' knowledge, all claims listed on Schedule D arose or were incurred prior to the Petition Date. The amounts in Schedule D are consistent with the Debtors' stipulations set forth in the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Claims, (IV) Granting Adequate Protection*

*to Prepetition Lenders, (V) Modifying Automatic Stay, and (VI) Granting Related Relief* [Docket No. 652] (the "**DIP Order**"), which remain subject to investigation and challenge by the Creditors' Committee or other parties in interest, all as more fully set forth in the DIP Order and the order extending the time for the Creditors' Committee to challenge such liens entered by the Bankruptcy Court on August 21, 2020 [Docket No. 774].

Except as otherwise agreed to or stated pursuant to a stipulation, agreed order, or general order entered by the Bankruptcy Court that is or becomes final, including the DIP Order, the Debtors and their estates reserve their right to dispute and challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to a creditor listed on Schedule D of any Debtor and, subject to the foregoing limitations, note as follows: (a) although the Debtors may have scheduled claims of various creditors as secured claims for informational purposes, no current valuation of the Debtors' assets in which such creditors may have a lien has been undertaken; (b) the Debtors reserve all rights to dispute and challenge the secured nature of any creditor's claim, the characterization of the structure of any such transaction, or any document or instrument related to such creditor's claim; and (c) the descriptions provided on Schedule D only are intended to be a summary.  Reference to the applicable loan agreements and related documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens.

Detailed descriptions of the Debtors' prepetition debt structure and descriptions of collateral relating to the debt contained on Schedule D are contained in the *Declaration of Daniel Hugo in Support of Debtors' Chapter 11 Petitions and First Day Relief* [Docket No. 4] (the "**First Day Declaration**").  Although there are multiple parties that hold a portion of the Debtors' indebtedness, only the administrative agent has been listed for the purposes of Schedule D.  The descriptions provided in Schedule D are intended only to be a summary. Reference to the applicable loan documents is necessary for a complete description of the collateral and the nature, extent, and priority of any liens.  Nothing in these Notes or the Schedules and Statements shall be deemed a modification or interpretation of the terms of such agreements

Except as specifically stated herein, real property lessors, utility companies, and other parties that may hold deposits have not been listed on Schedule D.  Additionally, the Debtors have not included parties that may assert claims secured through setoff rights or inchoate statutory lien rights.

### Schedule E/F

a. **Part 1.**  The claims listed on Part 1 arose and were incurred on various dates.  A determination of the date upon which each claim arose or was incurred would be unduly burdensome and cost prohibitive.  Accordingly, no such dates are included for each claim listed on Part 1.  To the best of the Debtors' knowledge, all claims listed on Part 1 arose or were incurred before the Petition Date.

The Debtors have not listed any wage or wage-related obligations that the Debtors have paid pursuant to the First Day Orders on Part 1.  The Debtors believe that all such claims for wages, salaries, expenses, benefits, and other compensation as described in the First

Day Orders have been or will be satisfied in the ordinary course during these chapter 11 cases pursuant to the authority granted to the Debtors in the relevant First Day Orders.

Claims owing to various taxing authorities to which the Debtors potentially may be liable are included on Part 1. Such claims, however, may be subject to ongoing audits and/or the Debtors may otherwise be unable to determine with certainty the amount of the remaining claims listed on Part 1. Therefore, the Debtors have listed all such claims as "contingent" and "unliquidated," pending final resolution of ongoing audits or other outstanding issues.

The Debtors reserve their rights to dispute or challenge whether creditors listed on Part 1 are entitled to priority claims under the Bankruptcy Code.

b.  **Part 2.** The Debtors have exercised their reasonable efforts to list all liabilities on Part 2 of each applicable Debtor's Schedule. As a result of the Debtors' consolidated operations, however, Part 2 for each Debtor should be reviewed in these chapter 11 cases for a complete understanding of the unsecured claims against the Debtors. Certain creditors listed on Part 2 may owe amounts to the Debtors, and, thus, the Debtors may have valid setoff and recoupment rights with respect to such amounts. The amounts listed on Part 2 may not reflect any such right of setoff or recoupment, and the Debtors reserve all rights to assert the same and to dispute and challenge any setoff and/or recoupment rights that may be asserted against the Debtors by a creditor. Additionally, certain creditors may assert mechanics' or other similar liens against the Debtors for amounts listed on Part 2. The Debtors reserve their right to dispute and challenge the validity, perfection, and immunity from avoidance of any lien purported to be perfected by a creditor listed on Part 2 of any Debtor. In addition, certain claims listed on Part 2 may potentially be entitled to priority under section 503(b)(9) of the Bankruptcy Code. The Debtors reserve their right to dispute or challenge any priority asserted with respect to any liabilities listed on Schedule E/F.

Unless otherwise noted, the claims listed on Part 2 are based on the Debtors' books and records as of the Petition Date. Despite the Debtors' reasonable efforts to include all unsecured creditors on Part 2, including, but not limited to, trade creditors, landlords, utility companies, and other service providers, there may be instances where creditors have yet to provide proper invoices for prepetition goods or services. Although the Debtors maintain general accruals to account for these liabilities in accordance with GAAP, these amounts are estimates and have not been included on Part 2. Such amounts are, however, reflected on the Debtors' books and records, as required in accordance with GAAP, but such accruals primarily represent general estimates of liabilities and do not represent specific claims as of the Petition Date. The Debtors have made reasonable efforts to include as "contingent," "unliquidated," and/or "disputed" the claim of any party not included on the Debtors' open accounts payable that is associated with an account that has an accrual or receipt not invoiced.

Schedule E/F also contains information regarding pending litigation involving the Debtors. In certain instances, the relevant Debtor that is the subject of the litigation is unclear or undetermined. To the extent that litigation involving a particular Debtor has been

identified, however, such information is included on that Debtor's Schedule E/F. The amounts for these potential claims are listed as undetermined and marked as "contingent," "unliquidated," and "disputed" in the Schedules.

As of the Petition Date, the Debtors served approximately 3 million members nationwide. In the course of these chapter 11 cases, the Debtors will have provided notice of the general bar date to approximately 11.1 million current and former members and approximately 3.5 million guests. A determination of the amount of any claim that each of the Debtors' current members, former members, and guests may hold would be unduly burdensome and cost prohibitive.

With respect to those 8.000% senior unsecured notes due 2022 issued under that certain indenture, dated as of May 30, 2014, the Debtors have listed only the indenture trustee as the named creditor on Schedule F. Nonetheless, these notes are beneficially owned by a number of other parties.

As noted in the Global Notes, the Bankruptcy Court has authorized the Debtors to pay, in their discretion, certain non-priority unsecured claims pursuant to the First Day Orders. To the extent practicable, each Debtor's Schedule E/F is intended to reflect the balance as of the Petition Date, adjusted for post-petition payments made under some or all of the First Day Orders. Each Debtor's Schedule E/F will reflect that Debtor's payment of certain claims pursuant to the First Day Orders, and, to the extent an unsecured claim has been paid or may be paid, it is possible such claim is not included on Schedule E/F. Certain Debtors may pay additional claims listed on Schedule E/F during these chapter 11 cases pursuant to the First Day Orders and other orders of the Bankruptcy Court, and the Debtors reserve all of their rights to update Schedule E/F to reflect such payments or to modify the claims register to account for the satisfaction of such claims. Additionally, Schedule E/F does not include potential rejection damage claims, if any, of the counterparties to executory contracts and unexpired leases that may be rejected.

*Schedule G*

Although reasonable efforts have been made to ensure the accuracy of Schedule G regarding executory contracts and unexpired leases (collectively, the "**Agreements**"), the Debtors' review process of the Agreements is ongoing, and inadvertent errors, omissions, or over-inclusion may have occurred. The Debtors may have entered into various other types of Agreements in the ordinary course of their businesses, such as indemnity agreements, supplemental agreements, amendments/letter agreements, and confidentiality agreements which may not be set forth in Schedule G. As stated in the Global Notes, omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or unexpired lease. Schedule G may be amended at any time to add any omitted Agreement. Likewise, the listing of an Agreement on Schedule G does not constitute an admission that such Agreement is an executory contract or unexpired lease or that such Agreement was in effect on the Petition Date or is valid or enforceable. The Agreements listed on Schedule G may have expired or may have been modified, amended, or supplemented from time to time by various amendments, restatements, waivers, estoppel certificates, letters and other documents,

instruments, and agreements that may not be listed on Schedule G.  Any and all of the Debtors' rights, claims, and causes of action with respect to the Agreements listed on Schedule G are hereby reserved and preserved, and, thus, the Debtors hereby reserve all of their rights to (i) dispute the validity, status, or enforceability of any Agreements set forth on Schedule G; (ii) dispute or challenge the characterization of the structure of any transaction or any document or instrument related to a creditor's claim, including, but not limited to, the Agreements listed on Schedule G; and (iii) amend or supplement such Schedule as necessary.

Executory contracts for short-term service orders that are oral in nature have not been included in Schedule G.  Executory contracts that expired between the Petition Date and the filing of these Schedules are also excluded from Schedule G.

Certain of the Agreements listed on Schedule G may have been entered into by or on behalf of more than one of the Debtors.  Additionally, the specific Debtor obligor(s) to certain of the Agreements could not be specifically ascertained in every circumstance.  In such cases, the Debtors have made reasonable efforts to identify the correct Debtor's Schedule G on which to list the Agreement, and, where a contract party remained uncertain, such Agreement may have been listed on a different Debtor's Schedule G.

### Schedule H

The Debtors are party to various debt agreements that were executed by multiple Debtors.  The guaranty obligations with respect to the Debtors' prepetition indebtedness are noted on Schedule H for each individual Debtor.  In the event that two or more Debtors are co-obligors with respect to a scheduled debt or guaranty, such debt or guaranty is listed in the Schedule and Statement of each such Debtor at the full amount of such potential claim, and such claim is marked "contingent" and "unliquidated."

In the ordinary course of their businesses, the Debtors are involved in pending or threatened litigation and claims arising out of the conduct of their businesses.  Some of these matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counter-claims against other parties and some or all of whom may have been named as plaintiffs and defendants inadvertently.  Such claims are listed elsewhere in the Schedules, and they have not been set forth individually on Schedule H.

Except as otherwise indicated, the Debtors have identified the primary Debtor obligor(s) with respect to their executory contracts, unexpired leases, and other agreements.  The Debtors reserve their rights to amend and supplement the Schedules and Statements to the extent that guarantees and other secondary liability claims are identified.

No claim set forth on the Schedules and Statements of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other Debtors or non-Debtors.  To the extent these Notes include notes specific to Schedules D–G, such Notes also apply to the co-Debtors listed in Schedule H.  The Debtors reserve all of their rights to amend the Schedules to the extent that additional guarantees are identified or such guarantees are discovered to have expired or be unenforceable.

### Specific Notes with Respect to the Debtors' Statements of Financial Affairs

**Part 1, Question 1**

The income stated in the Debtors' response to Question 1 is consistent with the consolidated sales disclosed in compliance with GAAP.

The Debtors' fiscal year ends on the last day of each calendar year:

- **FY 2018**:  Comprised of 52 weeks ending December 31, 2018.

- **FY 2019**:  Comprised of 52 weeks ending December 31, 2019.

- **Stub Period 2020**:  Comprised of approximately 23 weeks ending June 14, 2020.

**Part 2, Question 3**

The obligations of the Debtors are primarily paid by and through 24 Hour Fitness USA, Inc., notwithstanding the fact that certain obligations may be obligations of one or more of the affiliated Debtors.

The payments disclosed in SOFA 3 are based on payments made by the Debtors with payment dates from March 15, 2020 to June 14, 2020.  The Debtors have listed payroll-related amounts in the aggregate, which includes amounts that were paid to insiders and included in response to Question 4. Amounts still owed to creditors will appear on the Schedules for each Debtor, as applicable.

All payments for services of any entities that provided consultation concerning debt counseling or restructuring services, relief under the Bankruptcy Code, or preparation of a petition in bankruptcy within one year immediately preceding the Petition Date are listed on Question 11 and are excluded from Question 3.

**Part 2, Question 4**

For purposes of the Schedules and Statements, the Debtors define insiders as (a) officers, directors, and anyone in control of a corporate debtor and their relatives and (b) affiliates of the Debtor and insiders of such affiliates. Individuals listed in the Statements as insiders have been included for informational purposes only.  The Debtors do not take any position with respect to (i) such individual's influence over the control of the Debtors, (ii) the management responsibilities or functions of such individual, (iii) the decision-making or corporate authority of such individual, or (iv) whether such individual could successfully argue that he or she is not an insider under applicable law, including, without limitation, the federal securities laws, or with respect to any theories of liability or for any other purpose.  Thus, the Debtors reserve all rights to dispute whether someone identified is in fact an "insider" as defined in section 101(31) of the Bankruptcy Code. For more information regarding each Debtor's officers and directors, please refer to Question 28 and Question 29 of the Statements.

Home addresses for directors, former directors, employees, and former employees identified as insiders have not been included in the Statements for privacy reasons.[2]  Amounts still owed to creditors will appear on the Schedules for each of the Debtors, as applicable.

The payroll-related amount shown in response to Question 4, which includes, among other things, salary, wage, and additional compensation, is a gross amount that does not include reductions for amounts including employee tax or benefit withholdings.  In the ordinary course of business, certain corporate or personal credit cards may be utilized by insiders to pay for travel and business-related expenses for various other individuals employed by the Debtors.  As it would be unduly burdensome for the Debtors to analyze which credit card expenses related to those incurred on behalf of an insider as opposed to another employee (or the Debtors), the Debtors have listed the aggregate amount paid for such expenses.  Amounts still owed to creditors will appear on the Schedules for each of the Debtors.

**Part 2, Question 6**

The Debtors incur certain offsets and other similar rights in the ordinary course of business. Offsets in the ordinary course can result from various items, including, without limitation, billing discrepancies, overpayments, returns, and other disputes between the Debtors and their club members, vendors, and contract counterparties.  These offsets and other similar rights are consistent with the ordinary course of business in the Debtors' industry and are not tracked separately.

**Part 3, Question 7**

Actions described in response to Question 7 include, but are not limited to, consumer disputes, employee matters, and personal injury suits.

The Debtors reserve all of their rights and defenses with respect to any and all listed lawsuits and administrative proceedings.  The listing of such suits and proceedings shall not constitute an admission by the Debtors of any liabilities or that the actions or proceedings were correctly filed against the Debtors or any affiliates of the Debtors.  The Debtors also reserve their rights to assert that neither the Debtors nor any affiliate of the Debtors is an appropriate party to such actions or proceedings.  Further, the Debtors operate in numerous jurisdictions and in the ordinary course of business may have disputed property valuations/tax assessments.  The Debtors have not listed such disputes on Question 7.

**Part 4, Question 9**

The donations and/or charitable contributions listed in response to this question represent payments made by the Debtors to third parties during the applicable timeframe that were recorded as such within the Debtors' books and records.  In addition to the charitable contributions listed therein, the Debtors may make *de minimis* gifts or gifts in kind from time to time.

---

[2]   On June 16, 2020, the Bankruptcy Court entered an order granting the Debtors' motion requesting authority to redact the home addresses of the Debtors' current and former employees.  [*See* Docket No. 119.]

**Part 5, Question 10**

The Debtors occasionally incurred losses for a variety of reasons, including theft and property damage. The Debtors, however, may not have records of all such losses if such losses do not have a material impact on the Debtors' business or are not reported for insurance purposes. Accordingly, in this context, the Debtors have not listed such losses.

Additionally, the Debtors have not listed any losses arising from or related to the COVID-19 pandemic.

**Part 6, Question 11**

All payments for services of any entities that provided consultation concerning debt counseling or restructuring services, relief under the Bankruptcy Code, or preparation of a petition in bankruptcy within one year immediately preceding the Petition Date are listed on the applicable Debtor's response to Question 11. Additional information regarding the Debtors' retention of professional service firms is more fully described in individual retention applications and related orders. In addition, the Debtors have listed payments made to professionals retained by the Debtors but not payments made to advisors of their lenders or other parties.

**Part 6, Question 13**

The Debtors may, from time to time and in the ordinary course of business, transfer equipment and other assets and/or sell certain equipment and other assets to third parties. These types of ordinary course transfers have not been disclosed in Question 13.

**Part 9, Question 16**

The Debtors collect a limited amount of information from club members and guests, including personally identifiable information, via their website portals and mobile applications, over the telephone, or in person in order to provide services to members and guests and inform them of new products and services. Examples of the types of information collected by the Debtors include, among other things, mailing addresses, email addresses, phone number, and names. The Debtors retain such information as long as is necessary for the Debtors to comply with business, tax, and legal requirements. The Debtors maintain privacy policies and have information security protocols to safeguard personally identifiable information.

**Part 9, Question 17**

As of the Petition Date, the Debtors maintained a non-qualified deferred compensation plan (a/k/a the 24 Hour Fitness USA, Inc. Deferred Compensation Plan) (the "**NQDC Plan**"). Claims of participants in the NQDC Plan have been listed with an "unknown" value and designated as "contingent" and "unliquidated."

**Part 10, Question 18**

In the ordinary course of the Debtors' business, the Debtors are engaged in various financial instruments, including Letters of Credit that are renewed on a regular basis. Certain accounts or

instruments that appear to have been "closed" were closed in regard to that particular period but were renewed for subsequent periods. To the extent the Debtors have any accounts or instruments that appear to have been closed but were in fact renewed for subsequent years and are continuing under a present renewal, the Debtors have not included those accounts or instruments in response to Question 18.

## Part 11, Question 21

In the ordinary course of business, the Debtors' club locations contain items owned by others, including, but not limited to vending machines and beverage coolers. The Debtors have not included such items in response to Question 21.

## Part 13, Question 26

a. **Question 26(a), (b), and (c).**

In the ordinary course of business, the Debtors retain certain bookkeepers, accountants, or other firms or individuals (collectively, "**Recipients**") in order to review the Debtors' books and records for the purpose of auditing the books and records or preparing financial statements. The Debtors have not included members of their management team in response to Question 26, given the number of such persons who may have reviewed the Debtors' books and records.

The Debtors do not maintain complete lists to track all persons who may have reviewed their books and records and cannot account for the possibility that persons may have reviewed the Debtors' books and records without the Debtors' knowledge or consent. Considering the number of such persons and the possibility that persons may have reviewed the Debtors' books and records without the Debtors' knowledge or consent, the Debtors have not disclosed any such persons for the purposes of Question 26.

b. **Question 26(d).**

The Debtors provided financial statements in the ordinary course of business to certain parties for business, statutory, credit, financing, and other reasons. Recipients have included regulatory agencies, financial institutions, investment banks, debtholders, and their legal and financial advisors. Financial statements have also been provided to other parties as requested. The Debtors do not maintain complete lists to track such disclosures and cannot account for the possibility that such information may have been shared with parties without the Debtors' knowledge or consent. Considering the number of such recipients and the possibility that such information may have been shared with parties without the Debtors' knowledge or consent, the Debtors have not disclosed any parties that may have received such financial statements for the purposes of Question 26(d).

## Part 13, Question 28

For each entity, the Debtors have included individuals identified as of the Petition Date as directors, officers, members, or managers, as applicable, of such entity in the Debtors' recordkeeping systems or, if no individuals were identified, an entity member, as applicable.

**Part 13, Question 29**

The disclosures relate specifically to terminated job titles or positions and are not indicative of the individuals' current employment status with the Debtors.  For each entity, the Debtors have included the individuals who, during the applicable period, were identified as directors and officers of such entity in the Debtors' recordkeeping systems.

**Part 13, Question 30**

Any and all known disbursements to insiders have been listed in response to Question 4.

**Fill in this information to identify the case:**

Debtor name  **24 Hour Fitness United States, Inc.**

United States Bankruptcy Court for the:  DISTRICT OF DELAWARE

Case number (if known)  **20-11560**

☐ Check if this is an amended filing

## Official Form 207
# Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy

04/19

**The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and case number (if known).**

### Part 1:    Income

1. **Gross revenue from business**

   ☐ None.

   | Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | Sources of revenue<br>Check all that apply | Gross revenue<br>(before deductions and exclusions) |
   | --- | --- | --- |

2. **Non-business revenue**
   Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

   ☐ None.

   | | Description of sources of revenue | Gross revenue from each source<br>(before deductions and exclusions) |
   | --- | --- | --- |

### Part 2:    List Certain Transfers Made Before Filing for Bankruptcy

3. **Certain payments or transfers to creditors within 90 days before filing this case**
   List payments or transfers--including expense reimbursements--to any creditor, other than regular employee compensation, within 90 days before filing this case unless the aggregate value of all property transferred to that creditor is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

   ☐ None.

   | Creditor's Name and Address | Dates | Total amount of value | Reasons for payment or transfer<br>Check all that apply |
   | --- | --- | --- | --- |

4. **Payments or other transfers of property made within 1 year before filing this case that benefited any insider**
   List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or cosigned by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $6,825. (This amount may be adjusted on 4/01/22 and every 3 years after that with respect to cases filed on or after the date of adjustment.) Do not include any payments listed in line 3. *Insiders* include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor. 11 U.S.C. § 101(31).

   ☐ None.

   | Insider's name and address<br>Relationship to debtor | Dates | Total amount of value | Reasons for payment or transfer |
   | --- | --- | --- | --- |

5. **Repossessions, foreclosures, and returns**
   List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller. Do not include property listed in line 6.

Debtor    **24 Hour Fitness United States, Inc.**                              Case number *(if known)* **20-11560**

■ None

| Creditor's name and address | Describe of the Property | Date | Value of property |
|---|---|---|---|

6. **Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☐ None

| Creditor's name and address | Description of the action creditor took | Date action was taken | Amount |
|---|---|---|---|
| **Refer to Global Notes** | | | **$0.00** |
| | Last 4 digits of account number: _____ | | |

<hr>

**Part 3:    Legal Actions or Assignments**

7. **Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**

List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity—within 1 year before filing this case.

■ None.

| Case title Case number | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|

8. **Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

■ None

<hr>

**Part 4:    Certain Gifts and Charitable Contributions**

9. **List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the aggregate value of the gifts to that recipient is less than $1,000**

■ None

| Recipient's name and address | Description of the gifts or contributions | Dates given | Value |
|---|---|---|---|

<hr>

**Part 5:    Certain Losses**

10. **All losses from fire, theft, or other casualty within 1 year before filing this case.**

■ None

| Description of the property lost and how the loss occurred | Amount of payments received for the loss<br><br>If you have received payments to cover the loss, for example, from insurance, government compensation, or tort liability, list the total received.<br><br>List unpaid claims on Official Form 106A/B *(Schedule A/B: Assets – Real and Personal Property)*. | Dates of loss | Value of property lost |
|---|---|---|---|

<hr>

**Part 6:    Certain Payments or Transfers**

11. **Payments related to bankruptcy**

List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

| Debtor | 24 Hour Fitness United States, Inc. | Case number *(if known)* | 20-11560 |

■ None.

| Who was paid or who received the transfer? Address | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|

12. **Self-settled trusts of which the debtor is a beneficiary**
List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing of this case to a self-settled trust or similar device.
Do not include transfers already listed on this statement.

■ None.

| Name of trust or device | Describe any property transferred | Dates transfers were made | Total amount or value |
|---|---|---|---|

13. **Transfers not already listed on this statement**
List any transfers of money or other property by sale, trade, or any other means made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

■ None.

| Who received transfer? Address | Description of property transferred or payments received or debts paid in exchange | Date transfer was made | Total amount or value |
|---|---|---|---|

**Part 7:**  **Previous Locations**

14. **Previous addresses**
List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

■ Does not apply

| Address | Dates of occupancy From-To |
|---|---|

**Part 8:**  **Health Care Bankruptcies**

15. **Health Care bankruptcies**
Is the debtor primarily engaged in offering services and facilities for:
- diagnosing or treating injury, deformity, or disease, or
- providing any surgical, psychiatric, drug treatment, or obstetric care?

■ No. Go to Part 9.
☐ Yes. Fill in the information below.

| Facility name and address | Nature of the business operation, including type of services the debtor provides | If debtor provides meals and housing, number of patients in debtor's care |
|---|---|---|

**Part 9:**  **Personally Identifiable Information**

16. **Does the debtor collect and retain personally identifiable information of customers?**

☐ No.
■ Yes. State the nature of the information collected and retained.

**Refer to Global Notes**

Does the debtor have a privacy policy about that information?
☐ No
■ Yes

| Debtor | 24 Hour Fitness United States, Inc. | Case number *(if known)* | 20-11560 |
|---|---|---|---|

17. **Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b), or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

■ No. Go to Part 10.
☐ Yes. Does the debtor serve as plan administrator?

## Part 10: Certain Financial Accounts, Safe Deposit Boxes, and Storage Units

18. **Closed financial accounts**
Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?
Include checking, savings, money market, or other financial accounts; certificates of deposit; and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

■ None

| Financial Institution name and Address | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

19. **Safe deposit boxes**
List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

■ None

| Depository institution name and address | Names of anyone with access to it Address | Description of the contents | Do you still have it? |
|---|---|---|---|

20. **Off-premises storage**
List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

■ None

| Facility name and address | Names of anyone with access to it | Description of the contents | Do you still have it? |
|---|---|---|---|

## Part 11: Property the Debtor Holds or Controls That the Debtor Does Not Own

21. **Property held for another**
List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

■ None

## Part 12: Details About Environment Information

For the purpose of Part 12, the following definitions apply:
*Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

*Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

*Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

22. **Has the debtor been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

| Debtor | 24 Hour Fitness United States, Inc. | | Case number *(if known)* | 20-11560 |
|---|---|---|---|---|

■ No.
☐ Yes. Provide details below.

| Case title | Court or agency name and | Nature of the case | Status of case |
|---|---|---|---|
| Case number | address | | |

**23. Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

■ No.
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

**24. Has the debtor notified any governmental unit of any release of hazardous material?**

■ No.
☐ Yes. Provide details below.

| Site name and address | Governmental unit name and address | Environmental law, if known | Date of notice |
|---|---|---|---|

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

**25. Other businesses in which the debtor has or has had an interest**
List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

■ None

| Business name address | Describe the nature of the business | Employer Identification number Do not include Social Security number or ITIN. Dates business existed |
|---|---|---|

**26. Books, records, and financial statements**
26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.
☐ None

| Name and address | | Date of service From-To |
|---|---|---|
| 26a.1. | **Deloitte Tax LLP**<br>**PO Box 844736**<br>**Dallas, TX 75284** | **2018 - Present** |
| 26a.2. | **Marshall & Stevens Inc**<br>**125 South Wacker Drive**<br>**Suite 850**<br>**Chicago, IL 60606** | **2018 - Present** |
| 26a.3. | **Aon (General Liability and Workes Comp A**<br>**1900 16th Street**<br>**Denver, CO 80202** | **2018 - Present** |
| 26a.4. | **Aon (Group Health Actuary)**<br>**1420 Fifth Avenue**<br>**Suite 1200**<br>**Seattle, WA 98101** | **2018 - Present** |

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☐ None

Debtor    24 Hour Fitness United States, Inc.                                    Case number *(if known)*  20-11560

| Name and address | Date of service From-To |
|---|---|
| 26b.1.  **Avertium (Terra Verde)**<br>**2019 PCI Compliance and Audit Services**<br>**20601 N. 19TH AVENUE**<br>**Phoenix, AZ 85027** | **May 2019 - October 2019** |

| Name and address | Date of service From-To |
|---|---|
| 26b.2.  **Avertium (Terra Verde)**<br>**2018 PCI Compliance and Audit Services**<br>**20601 N. 19TH AVENUE**<br>**Phoenix, AZ 85027** | **March 2018 - October 2018** |

| Name and address | Date of service From-To |
|---|---|
| 26b.3.  **Ernst & Young**<br>**560 Mission Street**<br>**Suite 1600**<br>**San Francisco, CA 94105** | **January 2018 - March 2019** |

| Name and address | Date of service From-To |
|---|---|
| 26b.4.  **PriceWaterhouseCoopers, LLP**<br>**3 Embarcadero Center**<br>**San Francisco, CA 94111** | **August 2018 - Present** |

| Name and address | Date of service From-To |
|---|---|
| 26b.5.  **Comyns, Smith, McCleary & Deaver, LLP**<br>**1777 Botelho Drive**<br>**Suite 350**<br>**Walnut Creek, CA 94596** | **2018 - Present** |

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|
| 26c.1.  **Korn Ferry US**<br>**420 Montgomery Street**<br>**San Francisco, CA 94104** | |
| 26c.2.  **McKinsey & Company Inc United States**<br>**666 Fifth Avenue**<br>**23 Floor**<br>**New York, NY 10103** | |
| 26c.3.  **Bain & Company Inc**<br>**1 Embarcadero Center**<br>**San Francisco, CA 94111** | |
| 26c.4.  **AT Kearney Inc**<br>**227 W. Monroe Street**<br>**Chicago, IL 60606** | |

26d. List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☐ None

Debtor   **24 Hour Fitness United States, Inc.**                     Case number *(if known)* **20-11560**

| Name and address |
|---|
| 26d.1.   **See Global Notes** |

## 27. Inventories

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☒  No
☐  Yes. Give the details about the two most recent inventories.

| Name of the person who supervised the taking of the inventory | Date of inventory | The dollar amount and basis (cost, market, or other basis) of each inventory |
|---|---|---|

## 28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Anthony Ueber | 12647 Alcosta Blvd., Suite 500 San Ramon, CA 94583 | Director | 0 |
| Anthony Ueber | 12647 Alcosta Blvd., Suite 500 San Ramon, CA 94583 | President and Chief Executive Officer | 0 |
| Chris Nelson | 12647 Alcosta Blvd., Suite 500 San Ramon, CA 94583 | Director | 0 |
| Chris Nelson | 12647 Alcosta Blvd., Suite 500 San Ramon, CA 94583 | Executive Vice President, Chief Financial Officer and Assistant Secretary | 0 |
| Dean Myatt | 12647 Alcosta Blvd., Suite 500 San Ramon, CA 94583 | Vice President, General Counsel and Secretary | 0 |
| Karl Sanft | 12647 Alcosta Blvd., Suite 500 San Ramon, CA 94583 | Executive Vice President and Chief Operating Officer | 0 |
| Kevin Bradshaw | 12647 Alcosta Blvd., Suite 500 San Ramon, CA 94583 | Senior Vice President, Chief Accounting Officer and Controller | 0 |
| Rodger Meads | 12647 Alcosta Blvd., Suite 500 San Ramon, CA 94583 | Vice President, Finance and Treasurer | 0 |
| Tami Majer | 12647 Alcosta Blvd., Suite 500 San Ramon, CA 94583 | Executive Vice President and Chief Human Resources Officer | 0 |

| Debtor | 24 Hour Fitness United States, Inc. | Case number *(if known)* | 20-11560 |
| --- | --- | --- | --- |

29. **Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☐ No
■ Yes. Identify below.

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
| --- | --- | --- | --- |
| Frank Napolitano | 12647 Alcosta Blvd., Suite 500 San Ramon, CA 94583 | Director | |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
| --- | --- | --- | --- |
| Frank Napolitano | 12647 Alcosta Blvd., Suite 500 San Ramon, CA 94583 | President | |

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
| --- | --- | --- | --- |
| Thomas Lapcevic | 12647 Alcosta Blvd., Suite 500 San Ramon, CA 94583 | Executive Vice President, Chief Marketing Officer | |

30. **Payments, distributions, or withdrawals credited or given to insiders**
Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

■ No
☐ Yes. Identify below.

| Name and address of recipient | Amount of money or description and value of property | Dates | Reason for providing the value |
| --- | --- | --- | --- |

31. **Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☐ No
■ Yes. Identify below.

| Name of the parent corporation | Employer Identification number of the parent corporation |
| --- | --- |
| 24 Hour Holdings I Corp. | EIN: 46-5288654 |
| 24 Hour Fitness Worldwide, Inc. | EIN: 94-3215690 |

32. **Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

■ No
☐ Yes. Identify below.

| Name of the pension fund | Employer Identification number of the parent corporation |
| --- | --- |

Debtor   **24 Hour Fitness United States, Inc.**                    Case number *(if known)*   **20-11560**

---

**Part 14:**   Signature and Declaration

---

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   **August 27, 2020**

**/s/ Chris Nelson**                                 **Chris Nelson**
Signature of individual signing on behalf of the debtor          Printed name

Position or relationship to debtor   **Executive Vice President and Chief Financial Officer**

**Are additional pages to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?**
☐ No
☑ Yes